IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| DONALD H. BAILEY, | § | Chapter 11 |
| | § | |
| Debtor, | § | Case No. 07-41381-LWD |

| | | |
|---|---|---|
| DONALD H. BAILEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adversary No._____ |
| | § | |
| HAKO-MED USA, INC., | § | |
| | § | |
| and | § | |
| | § | |
| KAI HANSJURGENS, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

COMES NOW, Donald H. Bailey, Debtor-in-Possession/Plaintiff in the above-captioned case and files this Complaint showing the Court as follows:

### Jurisdiction and Authority

1. Plaintiff Donald H. Bailey, hereinafter "Plaintiff", is the Debtor in a Chapter 11 proceeding filed in this Court on September 4, 2007, and as such is the Debtor-in-Possession. 11 U.S.C. §1101.

2. Plaintiff, as Debtor-in-Possession, is empowered with all of the rights of a trustee to bring a complaint. 11 U.S.C. §1107

-1-

3. Hako-Med USA, Inc., co-Defendant in this adversary, hereinafter "Hako-Med", is a Hawaii Corporation and can be served with summons and process by serving Kai Hansjurgens, 4678 Kahala Ave., Honolulu, Hawaii, 96816, as the authorized agent for service according to the records filed by Defendant in the Office of the Secretary of State for the State of Hawaii. Defendant does business in various states and cities of the United States, including Savannah, Chatham County, Georgia.

4. Kai Hansjurgens, co-Defendant in this adversary, hereinafter "Hansjurgens" is an individual and can be served with summons and process by serving Kai Hansjurgens, 4678 Kahala Ave., Honolulu, Hawaii, 96816.

5. Plaintiff is empowered to file this Complaint to recover property of the estate pursuant to Fed.R.Bankr.P. 7001 (1) as this property is a valuable asset of the estate, is necessary for a successful reorganization, and the Court has jurisdiction under the provisions of 28 U.S.C. §§ 1334, 151 and 157(a). Further, pursuant to 28 U.S.C. §157(b)(2)(E), this is a core proceeding. See also, Fed.R.Bankr.P. 7008(a).

6. The claims for relief alleged in this Complaint are related to a case pending under Title 11 in the United States Bankruptcy Court for the Southern District of Georgia (the "Bankruptcy Court") and are based on Georgia common law. The pending bankruptcy case to which the claims for relief alleged in this Complaint are related is Donald H. Bailey, Bankruptcy Case No. 07-41381-LWD (the "Bailey Case").

7. Pursuant to 28 U.S.C. §1409, venue is proper in the Southern District of Georgia because the Bailey Case is pending in this district and because of complete diversity, issues involving statutes of the United States and because Defendants had minimum contacts sufficient

-2-

to satisfy jurisdictional requirements in Georgia.

## SALIENT ALLEGATIONS

8.  Plaintiff is a medical doctor in the business of leasing medical equipment to practicing physicians.

9.  In November and December of 2004, Martin Ellis, a sales and marketing representative for Hako-Med USA, Inc., Defendant, visited the office of Plaintiff, Donald H. Bailey, M.D. for a sales meeting.  Mr. Ellis was accompanied by Mark Johnson, another sales representative for Defendant, Hako-Med.

10.  Mr. Ellis and Mr. Johnson introduced Plaintiff to a line of Defendant, Hako-Med's medical equipment, specifically, an electro-medical device which consisted of two units, the "Pro ElecDT 2000" and the "VasoPulse 2000".  Together these two devices used electronic stimulation to treat painful conditions in patients and the combination is referred to as "Horizontal Therapy".

11.  A critical and material portion of Mr. Ellis and Mr. Johnson's presentation involved written materials outlining how treatment with the device would be billed to insurance, particularly Medicare, and the expected reimbursement by Medicare.

12.  Mr. Ellis and Mr. Johnson provided a booklet on billing that contained several pages detailing the two CPT (Current Procedural Terminology) (hereinafter "CPT Code") billing codes which they claimed could be used with Defendant, Hako-Med's equipment.  One code was 97032 for "electrical stimulation" and the other code was 97112 for "neuromuscular re-education".  The two codes were to be billed simultaneously for each 15 minutes of treatment.

13.  Mr. Ellis stated that doctors were billing these two codes in combination and for 3

-3-

units of 15 minutes each with total reimbursement in the rage of $140 to $180 per session and "sometimes more".

14.   Employees of Hako-Med acted at the direction of Mr. Hansjurgens who knew or should have known what his salespersons were representing to potential purchasers of Hako-Med equipment.

15. Documents provided to Plaintiff by Defendant, Hako-Med indicated that an office treating eight (8) patients per day would be reimbursed a minimum of $1,120 per day. Defendant, Hako-Med further represented that an office treating twenty (20) patients each month would receive reimbursement in the range of $3,000 per month.

16. Defendant, Hako-Med charged $21,900 for each piece of equipment and it was represented that the equipment could be leased for $800 per month.

17. Plaintiff discussed the billing codes and equipment prices with two principals at Hako-Med USA, Inc., Kai Hansjurgens, the President and co-Defendant, and Patrick Cullen, the Chief Financial Officer.  Both individuals confirmed the two-code billing system and the range of reimbursement.

18. In December of 2004, Plaintiff entered into an agreement to purchase multiple equipment units from Defendant, Hako-Med.  The agreement gave Plaintiff a territory for marketing the equipment and allowed him to use the equipment with several doctor groups to which he was already leasing equipment.

19.   Plaintiff purchased at least 18 units for a total of $388,200.

20.   Plaintiff purchased the equipment based on the representations of Defendants that the equipment would be profitable and that doctors would be reimbursed in the approximate amount

-4-

of the rates stated in paragraph 13 herein.

21.  Plaintiff's employee, Tony Calandra, attended a national Hako-Med conference in January 2005 where Hako-Med again asserted that the two-code billing system was the recommended procedure.

## I. FRAUDULENT  MISREPRESENTATION AND DECEIT

22. Plaintiff restates and realleges each and every allegation contained in paragraphs 1 through 21 as if fully rewritten herein.

23.  Soon after placing the equipment in various doctors' offices, Plaintiff became aware that Medicare and various insurance companies were denying claims for use of the equipment when the CPT billing codes recommended by Defendants were used.  Insurance companies (including Medicare) cited the two-code system as inaccurate with regard to the procedure performed.  Insurance companies (including Medicare) would only reimburse for the electrical stimulation code.  As a result, reimbursement was less than half of what Defendants had represented.

24.  Plaintiff is not a billing specialist.

25.  Plaintiff contacted Defendants regarding the claims being denied.  Defendant, Hako-Med's representatives claimed they had not experienced such a problem.

26.  Plaintiff suggested and Defendant, Hako-Med, agreed to an independent billing analysis.  Peer Review Network, (hereinafter "PRN"), was chosen to perform the analysis.

27.  PRN determined that Defendant, Hako-Med's billing strategy was erroneous.  PRN found that the principle in Medicare is NOT to bill for overlapping or simultaneous services and that this Medicare principle is shared by non-Medicare payors as well.  PRN recommended an

alternative strategy under which to bill Horizontal Therapy (using Defendant, Hako-Med's device) to avoid possible criminal conduct and litigation with payors.

28.  Plaintiff later discovered that PRN had performed an analysis of the appropriate CPT code to be used in billing for Horizontal Therapy in early 2004, almost a year before Plaintiff purchased Defendant, Hako-Med's devices, in which PRN stated that the appropriate CPT code for Horizontal Therapy is only 97032 (Application of a modality to one or more areas/electrical stimulation (manual)), each 15 minutes.  This represents reimbursement by Medicare of approximately $15 per 15 minute segment multiplied by two for a total reimbursement of $30 per treatment.

29.  Defendants were aware of the appropriate billing code for Horizontal Therapy for at least a year before recommending the two-code combination to Plaintiff and others.

30.  Defendants recommended a fraudulent billing strategy to Plaintiff and other physicians even after the PRN report detailing the correct CPT code to them.

31.  Even after the PRN report requested by Plaintiff revealed that the two-code billing system was and is still not appropriate, Defendants continued to recommend the two-code billing system to physicians.

32.  Defendants continue to misrepresent the level of reimbursement for its equipment and places physicians in jeopardy for fraudulent billing of Medicare and other insurance providers.

33.  From February 24th to February 26th, 2007, Plaintiff attended a Medical Education Conference in Orlando, Florida.  Two of Defendant Hako-Med's sales representatives were present and still promoting Hako-Med's devices as aforesaid.

34.  With regard to revenue generation, Hako-Med's written advertisements claim that the ProElecDT 2000 performs and can be billed as two independent therapies simultaneously.  It also states that the two most common billing codes are 97032, Electronic Stimulation and 97112, Neuromuscular Re-education and that a thirty minute treatment pays $92.08 on average.

35.  Hako-Med advertised a lease of its equipment for $800 per month with net revenue of $4,724.80 per month.

36.  Defendants continue to make the same false representations made to Plaintiff to new potential customers.  Defendants also have a history of making the same misrepresentations.

37.  Defendants knew the amount of reimbursement which could be generated through the use of the device.

38.  Defendants' statements that Plaintiff could be reimbursed $140 to $180 or more per patient induced Plaintiff to enter into a contract to purchase Hako-Med's devices.

39.  Defendant knowingly and intentionally misrepresented the revenue generation of its device to Plaintiff to induce him to purchase the equipment.

40.  Plaintiff has suffered significant financial losses from the purchase of Hako-Med's equipment.

41.  Plaintiff tried to lease the equipment but he has been unsuccessful due to the inability of doctors to bill anywhere near Hako-Med's advertised rates for use of the equipment.

42.  Plaintiff purchased 18 machines from Hako-Med.  Plaintiff paid $388,200 to Hako-Med and any payment he has receiving for leasing the machines has been negligible.

-7-

## II. NEGLIGENT MISREPRESENTATION

43.  Plaintiff restates and realleges each and every allegation contained in paragraphs 1 through 42 as if fully rewritten herein.

44.  In the alternative, if the Court finds that the Defendants did not act recklessly or with intent to defraud Plaintiff, at the very least, Defendants' actions were negligent and caused significant economic loss to Plaintiff.

45.  Defendants are in the business of selling medical equipment.

46.  Defendants represent that they have special knowledge or are experts in the area of medical equipment.

47.  Defendants made specific representations to Plaintiff regarding the revenue generation of their medical devices and thus these representations were done with the expectation that Plaintiff would reasonably rely on them.

48.  Defendants recommend billing procedures.

49.  Defendants had a duty of reasonable care to assure that the representations made with regard to the billing codes advertised were correct when those bill codes were used to induce customers to enter into contracts for the sale of the devices.

50.  If Defendants did not have actual knowledge of the falsity of its billing representations, they should have known that the codes they advertised were incorrect.

51.  As a result of the incorrect billing codes represented by Defendants, Plaintiff was not able to collect the expected revenue from leasing the Horizontal Therapy equipment to physicians.

52.  Plaintiff lost $388,200 from the purchase of Hako-Med's machines, which, as a result of Defendants' conduct, are worthless.

-8-

### III. INTERFERENCE WITH CONTRACT

53. Plaintiff restates and realleges each and every allegation contained in paragraphs 1 through 52 as if fully rewritten herein.

54. Subsequent to discovering that Defendants misrepresented the income production of its machines, Plaintiff attempted to sell the machines outright.

55. Defendants contacted Plaintiff's potential clients and told them that Plaintiff did not have the right to resell the machines to other purchasers, that only Hako-Med could sell the machines. In addition, Defendants contacted Plaintiff's potential purchasers asserting that Plaintiff could not train potential clients and that only Hako-Med could train potential clients, all without any basis in fact or law.

56. Plaintiff could have recouped some of his losses by reselling the machines, however, Defendants prevented Plaintiff from contracting with other doctors for the sale of the machines.

57. Defendant deprived Plaintiff of even a partial recovery from the purchase of the Horizontal Therapy machines by interfering with his right to contract with other doctors for the sale of the machines.

### IV. RESCISSION OF CONTRACT

58. Plaintiff restates and realleges each and every allegation contained in paragraphs 1 through 57 as if fully rewritten herein.

59. All eighteen (18) machines have been maintained in unused condition within the custody and control of Plaintiff since they were purchased.

60. Plaintiff desires to return all eighteen (18) machines to Hako-Med and so tenders them.

-9-

61. As a result of Defendants' Fraud, Plaintiff is entitled to rescission of the contract; to return Hako-Med's equipment and receive funds paid for said equipment.

## V.  PUNITIVE DAMAGES

62. Plaintiff restates and realleges each and every allegation contained in paragraphs 1 through 61 as if fully rewritten herein.

63.  Defendants' conduct was fraudulent and rose to the level of such a conscious and deliberate disregard of the interests of others that the conduct showed willful misconduct, malice, fraud, wantonness, oppression and an entire want of care which raises the presumption of conscious indifference to consequences.

64. As a result of Defendants' intentional fraudulent conduct, punitive damages should be awarded against Defendants.

## VI.  ATTORNEY FEES

65. Plaintiff restates and realleges each and every allegation contained in paragraphs 1 through 64 as if fully rewritten herein.

66. Defendants have been stubbornly litigious, has acted in bad faith and Plaintiff is entitled to attorney fees. O.C.G.A. §13-6-11

WHEREFORE, Debtor/Debtor in Possession requests that this Court:

1. Enter judgment for the Plaintiff for rescission of the contract or, in the alternative, actual damages for breach of contract;

2. Enter judgment for the Plaintiff for punitive damages;

3. Award attorney fees and expenses to Plaintiff incurred as a result of this action;

-10-

4. And, any other relief this Court deems just and fair.


This _____ day of January, 2009


MCCALLAR LAW FIRM

By: _____
C. James McCallar, Jr.
Georgia Bar Number 481400
Attorney for Debtor


McCallar Law Firm
Post Office Box 9026
Savannah, GA 31412
(912) 234-1215

-11-