# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Adversary Proceeding |
| DONALD H. BAILEY | ) | |
| (Chapter 11 Case Number <u>07-41381</u>) | ) | Number <u>09-4002</u> |
| | ) | |
| *Debtor* | ) | |
| | ) | |
| DONALD H. BAILEY | ) | **FILED** |
| | ) | Samuel L. Kay, Clerk |
| *Plaintiff* | ) | United States Bankruptcy Court |
| | ) | Savannah, Georgia |
| | ) | By lbarnard at 4:56 pm, Oct 08, 2009 |
| v. | ) | |
| | ) | |
| HAKO-MED USA, INC. | ) | |
| and | ) | |
| KAI HANSJURGENS | ) | |
| | ) | |
| *Defendants* | ) | |

### MEMORANDUM AND ORDER

Debtor Donald H. Bailey filed Chapter 11 on September 4, 2007. He instituted this adversary proceeding on January 29, 2009 alleging multiple claims against Defendants Hako-Med USA, Inc., ("Hako-Med") and Kai Hansjurgens ("Hansjurgens"). Defendants answered on March 10, 2009 and filed a Motion to Dismiss on June 16, 2009, claiming that all issues are subject to an arbitration provision in the Distributor/Sales Representative Agreement entered into by the parties. In response to Defendants' Motion

to Dismiss, Debtor filed a Cross-Motion for Determination that Arbitration Clause Does Not Apply on June 22, 2009 and a supplemental brief on August 17, 2009. Debtor filed a motion to amend his complaint, followed by Debtor's amended complaint on July 31, 2009. Defendants filed an amended answer on August 6, 2009, raising multiple defenses. After a hearing on the merits, I now make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor is a medical doctor and was also in the business of leasing medical equipment to practicing physicians. Amended Complaint, Dckt.No. 36, ¶ 8 (July 31, 2009). Defendants are engaged in the business of selling medical equipment and represent themselves to be experts about or to have special knowledge regarding the sale of medical equipment. Id., ¶¶ 43, 44; Answer to Amended Complaint, Dckt.No. 38, ¶¶ 43, 44 (August 6, 2009). Defendants' sales representatives visited Debtor multiple times in late 2004 to discuss an electro-medical system consisting of the Pro ElecDT 2000 device and the VasoPulse 2000 device. When used together these devices deliver a treatment called "Horizontal Therapy." Amended Complaint, Dckt.No. 36, ¶¶ 9, 10; Answer to Amended Complaint, Dckt.No. 38, ¶¶ 9,10. Debtor alleges that during these visits Defendants' sales representatives presented information regarding the insurance billing and the high level of expected reimbursement for Horizontal Therapy. Amended Complaint, Dckt.No. 36, ¶¶ 11, 12.

Debtor alleges that he purchased at least 24 Horizontal Therapy systems for $525,600 in December 2004 (the "December Sale"), relying on the expected insurance billing protocols and the expected range of reimbursement presented by Defendants' sales representatives. Amended Complaint, Dckt.No. 36, ¶¶ 17, 18. Debtor claims that the purchase of these units was separate from and unfettered by any arbitration clause. Supplemental Brief, Dckt.No. 42, p. 3 (August 17, 2009). Later, Debtor and Defendants entered into a pre-petition Distributor/Sales Representative Agreement (the "Distributor Agreement") on March 29, 2005. Agreement, Dckt.No. 38, Ex. A. The Distributor Agreement states that the effective term is February 2, 2005 through January 31, 2006 (the "Effective Term"). Id., p. 1. The Distributor Agreement contains an arbitration provision, which in the relevant paragraph states that "any controversy or claim arising out of or relating to the Distributor Agreement, or breach thereof, shall be settled by arbitration in Honolulu, Hawaii in accordance with the Commercial Arbitration Rules of the American Arbitration Association." (The "Arbitration Clause"). Id., ¶ 22.

The Distributor Agreement related to Debtor's sale of Pro ElecDT 2000 sales occurring within the Effective Term. The Distributor Agreement did not relate to any purchase or sale of anything except the Pro ElecDT 2000 or to the sale of any equipment outside the Effective Term. The Distributor Agreement states that "Sales Representative agrees to purchase and/or cause the sale of a minimum seven (7) PRO ElecDT 2000 Systems per month ('Monthly Minimum'). As 24 units have already been purchased to date by

Donald H. Bailey, M.D., 7 of these will be applied to January, 2005, 7 to February, 2005, 7 to March, 2005, and 3 to the April, 2005 Monthly Minimum." Id., p. 1. The Distributor Agreement omits any reference to the VasoPulse 2000 device.

Debtor states that after purchasing the equipment, the billing codes provided by Defendants were denied by insurers and that the actual range of reimbursement was a small fraction of what Defendants had represented it would be. Amended Complaint, Dckt.No. 36, ¶¶ 22, 27. Debtor alleges that as a result of this disparity he could not lease or sell the equipment. Cross Motion, Dckt.No. 42, p. 2.

Debtor filed a voluntary Chapter 11 bankruptcy on September 4, 2007. On January 28, 2009, Debtor filed an adversary proceeding against Defendants alleging that he relied on the representations made by Defendants regarding the billing codes and the reimbursement range and that he suffered damages. Complaint, Dckt.No. 1 (January 28, 2009).

Debtor asserts multiple causes of action. First, Debtor argues that Defendants recklessly or with intent to defraud misrepresented the profitability of Horizontal Therapy by advising the use of a billing code known by the Defendants to have been rejected by Medicare and other insurance companies. Second, Debtor argues that if the court fails to find recklessness or intent to defraud, that Defendants negligently misrepresented the

⚛AO 72A
(Rev. 8/82)

4

profitability of Horizontal Therapy by advising the use of a billing code that they knew or should have known had been rejected by Medicare and other insurance companies. Third, Debtor claims that Defendants interfered with Debtor's contract by contacting Debtor's potential purchasers and asserting that only Defendants had the right to sell the devices and to train potential clients. Fourth, Debtor asserts fraudulent conveyance under O.C.G.A. § 18-2-70 et seq., claiming that he paid $525,600 to Defendants and received nothing of value in return. Debtor contends that the arbitration agreement is not applicable to the instant dispute because the Distributor Agreement is dated March 28, 2005 and the units at issue were purchased in December 2004. Motion, Dckt.No. 22, p. 2 (June 22, 2009). Debtor seeks compensatory damages for breach of contract and tort, punitive damages, and attorneys' fees from Defendants. Amended Complaint, Dckt.No. 36, p. 10.

In response, Defendants move to dismiss and/or stay the proceedings. Motion to Dismiss, Dckt.No. 21, p. 2 (June 16, 2009). Defendants claim that this "is a simple sales contract between two commercial parties." Brief in Support of Motion, Dckt.No. 20, p. 3 (June 16, 2009). As such, Defendants claim that the arbitration agreement is binding and applicable to the sale of the units at issue, and seek to arbitrate the issue in Hawaii. Defendants also defend on the merits, claiming that no billing codes were ever recommended and that all discussions of billing codes and reimbursement ranges were prefaced with proper disclaimers. Answer to Amended Complaint, Dckt.No. 38, p. 2. Debtor filed a cross-motion seeking to have the arbitration clause in the Distributor

Agreement deemed inapplicable. Cross Motion, Dckt.No. 22

## CONCLUSIONS OF LAW

"The [Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA")] reflects a liberal federal policy favoring arbitration agreements and creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc., 312 F.3d 1349, 1357 (11th Cir. 2002) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985) (internal quotations omitted)). The FAA encourages arbitration by enforcing agreements to arbitrate and establishes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). Despite this policy presumption, "arbitration is strictly a matter of contract." Klay v. All Defendants, 389 F.3d 1191, 1203 (11th Cir. 2004). As such, "the FAA does not require parties to arbitrate when they have not agreed to do so." Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989).

A party seeking to avoid enforcement of an arbitration clause must show one of two things: Either that the clause is not applicable by its terms, or that there is an "irreconcilable conflict'" between the FAA and the underlying purpose of another federal statute in question. Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 239 (1987);

Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1153 (3rd Cir. 1989); Friedman's, 372 B.R. at 538. The threshold inquiry—whether the arbitration agreement's terms make it applicable to the dispute—is an important initial step in an arbitration discussion. Friedman's, 372 B.R. at 538. Inapplicability of an arbitration agreement can be proven in one of two ways: either (1) by determining that the terms of the agreement do not require arbitration, or (2) by determining that the debtor or creditor are not parties to the agreement. In Friedman's the thrust of my analysis as to whether the arbitration clause was applicable revolved around the determination of whether the trustee is deemed to be a party to the agreement. In In re Martin, 387 B.R. 307 (Bankr. S.D. Ga. 2007) (Davis, C.J.), I again applied a multi-step analysis to determine the enforceability of an arbitration provision. The first step in that analysis was to determine whether the debtor in his capacity as a Chapter 13 debtor was a party to the arbitration agreement.

In the Friedman's and Martin cases, because the contested issue was whether the debtor-trustee was a party to the agreement, the question of whether the terms of the arbitration agreements required the disputes to be arbitrated went unaddressed. In this case, however, the issue hinges on the question of whether the Arbitration Clause even purports to cover the December Sale—is it applicable to the dispute?

### The Effective Date Rule

The Distributor Agreement references multiple dates. It was signed on

March 29, 2005, to be effective on February 2, 2005, and it recognizes that Debtor's previous purchase counted as credit toward his January 2005 through April 2005 Monthly Minimums. However, the units were purchased in December of 2004. The Distributor Agreement, which was retroactive, does not purport to cover any activity prior to February 2, 2005. The parties, in making the Distributor Agreement retroactive to February 2, 2005, had the opportunity to make the Distributor Agreement retroactive to December 2004. By choosing instead to make the Distributor Agreement term begin on February 2, 2005, the parties deliberately selected an Effective Term, thereby excluding everything outside that term as unfettered by the Distributor Agreement.

In Klay, 389 F.3d 1191, a group of physicians sued a collection of health maintenance organizations ("HMOs") on various grounds. HMOs moved to compel arbitration based on agreements that had been signed between the parties. Of the claims that arose outside the effective dates of the arbitration agreements, the Eleventh Circuit Court affirmed the District Court and held that "[b]ecause arbitration is strictly a matter of contract, [the Court] cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties." Id. at 1203.

Because the Distributor Agreement was effective on February 2, 2005 and the sale of the Horizontal Therapy units was completed in December of 2004, I rule that the December Sale is not governed by the Arbitration Clause and that any disputes arising from

that sale need not be arbitrated in accordance with the Arbitration Clause.

### The Separate Contract Rule

Furthermore, the Arbitration Clause states clearly that "any controversy or claim arising out of or relating to the Distributor Agreement, or breach thereof, shall be settled by arbitration in Honolulu, Hawaii in accordance with the Commercial Arbitration Rules of the American Arbitration Association." The terms of the Provision itself limit its effectiveness to controversies that "aris[e] out of or relat[e] to the Agreement." The Distributor Agreement is entitled "HAKO-MED USA, INC. DISTRIBUTOR/SALES REPRESENTATIVE AGREEMENT" and contemplates Debtor's rights and responsibilities as a Hako-Med Sales Representative. While the Distributor Agreement mentions the December Sale in a section entitled "Minimum Sales Levels," the Distributor Agreement does not incorporate the terms of the December Sale. The terms of the December Sale are contained in the invoices dated various days in December 2004 (the "Invoices") and make no mention of an arbitration agreement.

"Having one contract which contains a broad arbitration agreement does not necessarily mean that arbitration can be compelled when the subject of the dispute arises from a separate contract which does not have an arbitration clause." Klay, 389 F.3d at 1201. The Court "will compel no arbitration of issues that are outside an agreement to arbitrate." Brandon, 312 F.3d at 1358. It will "not override the clear intent of the parties, or reach a

AO 72A
(Rev. 8/82)

9

result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." Equal Employment Opportunity Comm'n v. Waffle House, Inc., 534 U.S. 279, 294 (2002). To be arbitrable under an agreement to arbitrate, the "connection [must be] sufficiently close to constitute a dispute arising during the execution, or performance" of the agreement. Armada Coal Export, Inc. v. Interbulk, Ltd., 726 F.2d 1566, 1568 (11th Cir. 1984). See also Thomas v. Carnival Corp., 573 F.3d 1113, 1118 (11th Cir. 2009) (applying the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, enforced in the U.S. though Chapter 2 of the FAA; holding that for a dispute to be arbitrable, it must have some actual relation to the agreement in which the arbitration provision is located.).

Because the Arbitration Clause is contained in the Distributor Agreement, and because the clear terms of the Distributor Agreement fail to reach the December Sale temporally or substantively, I rule that the December Sale is not covered by the Arbitration Clause and any disputes arising from that sale are not subject to arbitration. However, any causes of action related to the Debtor's resale or attempts to resell Pro ElecDT 2000 systems during the Effective Term (the "Separate Claims") arguably arise from the Distributor Agreement and are covered by the Arbitration Clause and must be arbitrated in accordance with the terms of the Arbitration Clause. Any such cause of action arising in that time frame arose pre-petition. When Debtor filed his case, all pre-petition assets—including these causes of action—became part of the bankruptcy estate. 11 U.S.C. § 541. The estate takes

pre-petition assets subject to all pre-petition defenses, including the affirmative defense of arbitration. 11 U.S.C. § 558.

### The Irreconcilable Conflict Rule

Because the Arbitration Clause is applicable to the Separate Claims, Debtor must arbitrate them in accordance with the Arbitration Clause unless he can avoid arbitration by demonstrating that there is an 'irreconcilable conflict' between the FAA and the underlying purpose of the Bankruptcy Code. Friedman's, 372 B.R. at 538 (noting that an irreconcilable conflict arises when the arbitration process "inherently undermines" rights afforded by the other federal statute. (citing Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 485-86 (1989))); Id. at 542 ("[B]ankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the Arbitration Act or that arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code." (quoting MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 108 (2d Cir.2006))); Id. ("[W]here an otherwise applicable arbitration clause exists, a bankruptcy court lacks the authority and discretion to deny its enforcement, unless the party opposing arbitration can establish congressional intent . . . to preclude waiver of judicial remedies for the statutory rights at issue." (quoting In re Mintze, 434 F.3d 222, 231 (3rd Cir. 2006) (quotations omitted))).

The delay, expense, or inefficiency of bifurcated or piecemeal litigation is not sufficient to constitute irreconcilable conflict. Rather, the conflict must rise to the level of substantial interference with the reorganization, violation of substantive bankruptcy principals such as equality of distribution, or some similar extraordinary interference with or evisceration of bankruptcy policy. Friedman's, 372 B.R. at 542-44. Because no such fundamental conflict is present in this case, Debtor must pursue the Separate Claims, if at all, according to the Arbitration Clause.

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that Defendants' Motion for a Stay of Proceedings is GRANTED for causes of action related to the Debtor's resale or attempts to resell Pro ElecDT 2000 Systems during the period February 2, 2005 through January 31, 2006 and is DENIED for all other causes of action. Debtor's Motion for Determination that Arbitration Provision Does Not Apply is DENIED for causes of action related to the Debtor's resale or attempts to resell Pro ElecDT 2000 Systems during the period of February 2, 2005 through January 31, 2006 and is GRANTED for all other causes of action.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 8th day of October, 2009.