# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Savannah Division

In the matter of: )
)
**DONALD H. BAILEY** )
(Chapter 11 Case Number <u>07-41381</u>) )
)
*Debtor* )
)
)
**DONALD H. BAILEY** )
)
*Plaintiff* )
)
v. )
)
**HAKO-MED USA, INC.** )
**AND** )
**KAI HANSJURGENS** )
*Defendants* )

**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By lbarnard at 3:24 pm, May 26, 2011

Adversary Proceeding
Number <u>09-4002</u>

## <u>MEMORANDUM AND PRELIMINARY ORDER</u>
## <u>ON DEBTOR'S MOTION FOR CONTEMPT</u>

In this Adversary Proceeding, the Plaintiff / Debtor has moved this Court to hold Defendants in contempt for failing to produce post-judgment discovery related to Defendants' financial situation. Defendant Kai Hansjurgens has responded, alleging that 1) Debtor waived his right to seek contempt charges by proceeding with the trial, 2) granting the Motion for Contempt would be an excessive fine or punishment, and 3) if this Court were to impose sanctions based on Defendants' failure to provide discovery under a prior Court Order—which is the basis of Debtor's Motion for Contempt—those sanctions would violate

Defendants' right to due process. Based on the entire record I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Debtor Donald H. Bailey filed Chapter 11 on September 4, 2007. As part of the administration of the estate, Debtor commenced an Adversary Proceeding against Hako-Med USA, Inc., and Kai Hansjurgens (together "Defendants"). The complaint raised numerous allegations arising out of a business relationship between Debtor and Defendants. The matter was partially resolved by Order of this Court on November 18, 2010. Bailey v. Hako-Med USA, Inc., Case No. 09-4002 (Nov. 18, 2010) (Davis, J.). In that interlocutory Order I awarded actual damages on a tort claim, and I held that punitive damages and attorneys' fees were appropriate, but reserved the determination of those amounts for a hearing on a later date. Id. at p. 21.

Debtor moved this Court to allow post-judgment discovery, correctly asserting that "[a] claim for punitive damages directly implicates the Defendants' financial status since the purpose of punitive damages is to financially punish the defendant and the trier of fact needs to know the finances of the defendant to avoid over or under punishing the party." Motion, Dckt. No. 98, p. 2 (Nov. 30, 2010). Debtor submitted to this Court the proposed interrogatories and requests for production of documents. Post Judgment Discovery, Dckt. No. 98-3 through 98-6. The discovery requests, while not precisely tailored to each Defendant individually, were generally tailored to discover information pertinent to

Defendants' financial status, and were therefore the subject of proper discovery. Id.

On December 1, 2010, Defendants simultaneously filed a Notice of Appeal of this Court's November 18, 2010, Order and objected to Debtor's request for post-judgment discovery, citing the pending appeal as a reason to delay the discovery. Objection, Dckt. No. 99 (Dec. 1, 2010); Notice of Appeal, Dckt. No. 100 (Dec. 1, 2010). Defendants filed that Notice of Appeal without first obtaining permission of this Court as required by 28 U.S.C. § 158(a)(3). On December 2, 2010, Defendants filed an Application to Appeal the Interlocutory Order, in accordance with 28 U.S.C. § 158(a)(3). Application to Appeal, Dckt. No. 102. On December 3, 2010, Defendants filed an Amended Application to Appeal the Interlocutory Order. Amended Application to Appeal, Dckt. No. 103. That same day, Defendants filed a Motion to Stay Pending Appeal, again requesting that the Court refrain from granting post-judgment discovery until the appeal is resolved. Motion to Stay, Dckt. No. 104.

A hearing was set to discuss three separate issues: 1) Debtor's Motion to Allow Post-Judgment Discovery; 2) Defendants' Amended Application for Permission to Appeal the November 18, 2010, Order; and 3) Defendants' Motion to Stay Execution of the November 17, 2010, Order Pending Appeal. That hearing was set on December 16, 2010, at the Savannah Courthouse.

That hearing was conducted as scheduled. I heard arguments from both sides and issued an Order on December 22, 2010, denying Defendants' Application for Permission to Appeal and Defendants' Motion to Stay Pending Appeal. Bailey v. Hako-Med USA, Inc., Case No. 09-4002 (Dec. 22, 2010) (Davis, J.). That Order also provided that there would be a hearing to establish the award of punitive damages and attorneys' fees. That hearing would result in a final Order, after which Defendants could appeal the ruling. Id.

On January 5, 2011, I issued a Scheduling Order which gave the parties until February 18, 2011, to complete discovery, and until February 28, 2011, to submit a pre-trial stipulation. Scheduling Order, Dckt. No. 112. Because of the nature of Debtor's discovery requests, on January 27, 2011, Defendants moved this Court to seal their discovery responses. Defendants alleged that "Defendants will be tendering confidential financial information" to Debtor pursuant to the Court-mandated February 18, 2011, deadline for discovery. Motion, Dckt. No. 119. That motion was granted by Order of this Court. Order, Dckt. No. 122 (Feb. 2, 2011).

A trial on the award of punitive damages and attorneys' fees was set for March 8, 2011. In anticipation of that trial, Defendants served Debtor with interrogatories. Defendants' Interrogatories to Plaintiff, Dckt. No. 125 (Feb. 9, 2011). Those interrogatories were generally directed at the merits of the underlying case, which had already been

adjudicated.[1]  Such requests are arguably not probative to the issue of punitive damages and attorneys' fees.  Defendants likewise served Debtor with a notice to produce (Dckt. No. 126 ( Feb. 9, 2011)), requesting access to documents which were arguably not relevant to the remaining issues.  Bailey v. Hako-Med USA, Inc., Case No. 09-4002 (Nov. 18, 2010) (Davis, J.).

The parties submitted a Proposed Consolidated Pretrial Order on March 1, 2011.  Proposed Consolidated Pretrial Order, Dckt. No. 133.  That same day, Debtor filed a Motion for Protective Order, requesting that this Court limit the scope of Defendants' permissible discovery to matters germane to the issue of punitive damages and attorneys' fees.  Motion for Protective Order, Dckt. No. 134.

On March 2, 2011 (six days before the scheduled trial date), Debtor filed a copy of all the Exhibits upon which he would rely at trial.  Exhibit List and Exhibits, Dckt. No. 135.  Still having insufficient discovery responses from Defendants, Debtor delivered a Motion to Compel, but did not file it of record out of confidentially concerns related to Defendants' sealed discovery responses.  Debtor was unsure whether this Court's Order requiring that Defendants' discovery be filed under seal also required Debtor to file his Motion to Compel that same discovery under seal.

---

[1]For example, Defendants requested that Debtor list "[a]ll 18 person, who were allegedly ready to buy and or lease these 18 Hako-Med USA, Inc. systems from either [Debtor] or any of his representatives." Defendants' Interrogatories to Plaintiff, Dckt. No. 125 ¶ 5. a. (Feb. 9, 2011).

Upon review of the competing and related discovery motions, and in light of the limited time remaining before the trial date, I called an unscheduled pre-trial conference to be held that same day in order to resolve the discovery quagmire which had developed in this case. Both Debtor's counsel and Defendants' counsel received actual telephone notice of the pre-trial conference, and both attorneys were present at that pre-trial conference. Prior to the pre-trial conference, an *in camera* conference was held with the attorneys to address the confidentiality issue. After that conference, the pre-trial conference commenced in open court. I ruled that the parties could file pleadings related to discovery without placing those pleadings under seal. I also held that each party would be deemed as having moved to compel the other party to produce discovery, and that each party would *also* be deemed as having moved this Court for a protective order. In other words, the mutual discovery disputes would be treated as mirror images of each other, with each side moving to compel the other's discovery, and each side moving for protection from that discovery. I held that the Court would then conduct a hearing to on the competing Motions to Compel and Motions for Protective Order.

Following that pre-trial conference, I entered an Order dated March 3, 2011, ordering (among other things) that Defendants produce truthful discovery responses *to their attorney* on or before March 8, 2011. I intended to have that discovery on hand when I conducted the March 8, 2011, trial (which was the trial date for the punitive damages / attorneys' fees issue). This decision was rendered in the interest of judicial economy and the

convenience of the parties, because Defendants are residents of Hawaii.  If the material was discoverable, it would need to be easily accessible at the time of trial.

At the close of the pre-trial conference, I stated that unreasonable refusals to comply with reasonable discovery requests would be met with sanctions.  While I would never impose sanctions on a party asserting a proper legal challenge to production, I perceived that at least some of the Defendants' refusals to produce were unreasonable and uncooperative, and potentially interfered with this Court's duty to resolve this case.  I concluded by reminding the parties that they "need to understand that this is serious business and the Court will not tolerate a cavalier attitude toward a party's obligation to provide discovery in a matter pending before the Court."

On March 8, 2011, this Court convened at the Savannah Courthouse to review the documents and to rule on the mutual Motions to Compel, the mutual Motions for Protective Order, and then to try the merits of the punitive damages and attorney's fees case as scheduled.  Despite my clear direction—based both on the written Motion to Compel presented in chambers and the oral Motion to Compel at the March 2, 2011, pre-trial conference—Defendants neither produced to their attorney any of the documents ordered in my March 3, 2011, Order, nor appeared at the trial, which had not been continued or rescheduled.

That trial proceeded as fully explained in <u>Bailey v. Hako-Med USA, Inc.</u>, Case No. 09-4002 (Apr. 7, 2011) (Davis, J.). The matter was finally resolved by that Order. Shortly thereafter, Debtor filed a Motion to Hold Defendants in Contempt, noting that Defendants did not produce the records to their attorney by the Court-imposed deadline of March 8, 2011. <u>Motion</u>, Dckt. No. 149 (Apr. 29, 2011). Defendant Hansjurgens has responded to that motion, alleging first that Debtor waived the right to seek contempt charges when he decided to proceed with the punitive damages trial, second that the Motion for Contempt violates Defendants' "right to due process under the Fifth Amendment to the U.S. Constitution," and third that any finding of contempt would be an excessive fine which "violates the Eighth Amendment to the U.S. Constitution." <u>Response</u>, Dckt. No. 153, ¶¶ 1,3 (May 3, 2011). These three contentions are the subject of this Order.

CONCLUSIONS OF LAW

<u>I. Pro Se Litigants</u>

Hansjurgens is proceeding in this litigation *pro se*. While courts have "provide[d] pro se parties wide latitude when construing their pleadings and papers," that only means that "[w]hen interpreting the pro se papers, the Court should use common sense to determine what relief the party desires." <u>S.E.C. v. Elliott</u>, 953 F.2d 1560, 1582 (11th Cir. 1992). Based on this standard, this Court interprets Hansjurgens's response as challenging the sufficiency of the notice for the March 2, 2011, pre-trial conference; as challenging any proposed finding of contempt as an excessive fine or punishment; and as asserting that

Debtor waived his right to pursue contempt by proceeding with the evidence on March 8, 2011.

## II.  Due Process

Hansjurgens claims that because "no Motion to Compel has ever been filed [of record] and the docket sheet is devoid of any such motion," that "no prior notice of an application to compel is known to have been made by [Debtor]."  Response, Dckt. No. 153, ¶¶ 1,3.   Hansjurgens further argues that this lack of notice is a violation of his Constitutionally guaranteed right to due process.  Response, Dckt. No. 153, ¶ 3.

### a.  Written Motion

Federal Rule of Bankruptcy Procedure 7037 makes Federal Rule of Civil Procedure 37 (Failure to Make Disclosures or Cooperate in Discovery) applicable in Adversary Proceedings such as this one.  Nothing in Federal Rule 37 requires that a Motion to Compel be a written motion. Fed. R. Civ. P. 37(a)(1).  In fact, many courts have granted oral motions to compel. James v. Heuberger Motors, Inc., 2011 WL 334473 (D. Colo. 2011) (granted in part and denied in part); Pownell v. CREDO Petroleum Corp., 2010 WL 5014499 (D. Colo. 2010); Kerner v. Terminix Intern. Co., LLC, 2008 WL 321267 (S.D. Ohio 2008); Gleason v. Cheskaty, 1995 WL 560139 (D. Idaho 1995).  Accordingly, Debtor's failure to file a written version of the oral Motion to Compel which this Court considered in the pre-trial conference on March 2, 2011, is not fatal to the motion.

### b. Notice

Defendants also assert that they did not receive notice of the March 2, 2011, pre-trial conference.   Defendants' attorney had actual telephone notice of the pre-trial conference and participated with the understanding that the Motions to Compel and the Motions for Protective Order would be discussed.

Federal Rule 37(a)(1) provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."  The Rule has no requirement that the notice be written, or that the party have any specified time of notice prior to the hearing.

Bankruptcy Rule 7016 makes Federal Rule of Civil Procedure 16 (Pre-Trial Procedure) applicable in Adversary Proceedings such as this one.  That rule provides that "[i]n any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences . . . ." Fed. R. Civ. P. 37(a).  The Rule also notes that "[a]t any pretrial conference, the court may consider and take appropriate action on the following matters: . . . (F) controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37 . . . ." Fed. R. Civ. P. 37(c)(2)(F).  It was for just such a pre-trial conference that I ordered the attorneys to appear on March 2, 2011.  Federal Rule of Civil Procedure 16 does not specify a minimum notice requirement for such an order.

Bankruptcy Rule 2002 requires that the Court must provide twenty-one day notice to parties in interest on specified proceedings. Fed. R. Bankr. P. 2002(a). It goes on to require twenty-eight day notice for other specified proceedings. Fed. R. Bankr. P. 2002(b). That Rule also provides different methods and requirements of notice within the bankruptcy case. However, Bankruptcy Rule 2002 makes no mention of a minimum notice requirement for a pre-trial conference.

Bankruptcy Rule 7026 makes Federal Rule of Civil Procedure 26 (General Provisions Regarding Discovery) applicable in Adversary Proceedings such as this one. The Rule has no requirement that notice of a pre-trial conference be written, or that the parties have any specified time of notice prior to the pre-trial conference.

In fact, the "default setting" for notice in the Bankruptcy Code is found in 11 U.S.C. § 102(1). It provides that "'after notice and a hearing' . . . means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances . . . ." The phrase "after notice and a hearing" does not appear in any discussion of notice required for a pre-trial conference. I note here that I am not bound by the phrase, but it informs my understanding of my role as a trial judge.

The phrase "after notice and a hearing" (or "after notice and hearing") appears throughout the Federal Rules and the Bankruptcy Rules. This flexible standard was

engineered to give courts the ability to conduct certain proceedings on short notice. Trial courts face the daunting task of timely adjudicating difficult cases. They are tasked with cutting a trail through a forest of issues and laying the track for the case to follow as it proceeds on its journey. The trial court's primary task is to keep the case on track, delivering an on-time adjudication, which benefits the parties by clearly defining their rights, and which benefits society by efficiently using the resources which are funded by the public.

This general need to resolve cases is accentuated when a court is confronted by last-minute events which threaten to delay the trial, especially when the delay (as it usually does) benefits one side. Avoiding this delay requires discretionary authority to regulate last minute matters, and it may require proceeding under notice which is short but reasonable. It is this situation—the short-notice hearing which attorneys for all parties attend—that is addressed by the requirement that the proceeding be held "after such notice as is appropriate in the particular circumstances . . . ." 11 U.S.C. § 102(1).

The Supreme Court has acknowledged that trial courts must have the flexibility to handle situations on short notice and without a traditional "notice." In Supreme Court of New Hampshire v. Piper, the Supreme Court noted that:

> In the course of litigation, pretrial hearings on various matters often are held on short notice. At times a court will need to confer immediately with counsel. Even the most conscientious lawyer residing in a distant State may find himself unable to

☜AO 72A
(Rev. 8/82)

> appear in court for an unscheduled hearing or proceeding. . . .
> The trial court, by rule or as an exercise of discretion, may
> require any lawyer who resides at a great distance to retain a
> local attorney who will be available for unscheduled meetings
> and hearings.

470 U.S. 274, 286-87 (1985) (discussing the merits of Vermont's residency requirement for admission to the bar). In the instant case, while Hansjurgens resides in Hawaii, his counsel is a local Savannah attorney who was present for the pre-trial conference. This is not a case in which Defendants had no representation at the pre-trial conference. Defendants' attorney was present and vigorously represented Defendants' interests and vigorously pursued their positions before the Court.

Because Hansjurgens has not directed this Court to any particular notice provision which this Court violated, and because the Court has the discretion to hold short-notice pre-trial conferences in order to efficiently manage the administration of a case, I find that Defendants were not denied due process by the pre-trial conference which was held on March 2, 2011.

## III. Excessive Fines

Hansjurgens also contends that a determination that Defendants are in contempt of this Court would constitute an excessive fine or punishment, and would therefore violate his Eighth Amendment rights. This Court takes that contention seriously

and it will be considered at the June 7, 2011, hearing set for this case.

## IV.  Waiver

Lastly, Hansjurgens contends that Debtor waived his right to request that Defendants be found to be in contempt.  Hansjurgens asserts that when Debtor proceeded to trial on the merits of punitive damages, he waived his right to assert that Defendants' failure to produce discovery was in contempt of this Court.  This Court takes that contention seriously and it will be considered at the June 7, 2011, hearing set for this case.  It should be noted, however, that contempt is an offense against the Court, not against an opposing party. *See e.g.,* In re Potter, 354 B.R. 301, 317 (Bankr. N.D. Ala. 2006) ("Section 105(a) does empower the court in very non-specific terms to enforce its own orders, most normally using civil contempt sanctions as coercive remedies for offenses against the court itself.").  It should also be noted that contempt is a continuing condition which exists until it is purged by compliance, and that obligation to comply may survive the trial of the case unless the judgment is satisfied.  Chandler v. James, 180 F.3d 1254, 1267-68 (11th Cir. 1999) (noting that coercive sanctions "continue[] only as long as the contemnor refuses to comply with the relevant court order.  Hence, in regard to coercive sanctions, it is often said that a contemnor carries the key to his prison in his own pocket.") *vacated on other grounds sub nom.* Chandler v. Siegelman, 530 U.S. 1256 (2000).

## V. Conclusion

Defendants remain under a continuing obligation to produce the discovery which was previously ordered to be produced by March 8, 2011. They may prevent a finding of contempt, or ameliorate the severity of contempt sanctions, by producing the required discovery at or before the June 7, 2011, hearing.

### O R D E R

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that Defendants were not denied due process because of the form of the Motion to Compel or because of the notice of the Motion to Compel, or by this Court's Order Compelling Discovery. All other issues raised by the parties will remain on the calendar.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 26th day of May, 2011.